JAMES L. McINTYRE ET AL. *v.* STANDARD OIL COMPANY OF NEW YORK, INC.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 6—decided April 4, 1940.

*Walfrid G. Lundborg,* for the appellant (defendant).

*John Buckley,* with whom was *Thomas F. Gallivan, Jr.,* for the appellees (plaintiffs).

HINMAN, J. The complaint alleged that the named plaintiff, hereinafter referred to as the plaintiff, and his wife, entered into a voluntary compensation agreement, pursuant to § 5247 of the General Statutes, with the defendant whereby the defendant agreed to pay them and they agreed to receive $6800 in full payment of all claims against the defendant by virtue of the Workmen's Compensation Act, which agreement was approved by the compensation commissioner, and filed in the office of the clerk of the Superior Court; that no

appeal was taken, but that the defendant has not paid the amount of the award. The defendant's answer admitted these allegations except that of nonpayment, but pleaded payment.

The finding on this appeal includes the following facts: The plaintiff had been an employee of the defendant for about sixteen years and was district manager for the Hartford district when, on or about January 15, 1933, he was involved in an accident in which he sustained an injury. He was not immediately incapacitated and continued at work until May 1st following, when he was given a leave of absence, which continued until October when he returned to the employ of the defendant at Albany, New York. He was given a further leave of absence from January 1, 1934, to June 30, 1934. During these leaves he rendered no services but continued to receive his full salary, which was $6800 per year. In May, 1934, the defendant, having learned that the plaintiff was making claim on a personal accident policy on account of injuries and disabilities claimed to have been sustained in the accident, requested from the compensation commissioner for the first district a hearing to determine whether he had sustained an injury compensable by it. A date for hearing was assigned, but on June 18, 1934, the defendant and the plaintiff and his wife, for themselves and on behalf of their minor children, entered into a voluntary compensation agreement. This agreement, which is made part of the finding, sets forth that the defendant had paid the plaintiff his wages from May 1, 1933, to June 30, 1934, a total of $7933.32, although during most of that time he had not performed any of the duties of his employment and that the parties agree that said payment and $6800, payable upon the signing of the agreement, "are to be considered as an advance commuted payment of

compensation into a single lump sum." The agreement was approved by the compensation commissioner on June 21, 1934, and was filed in the office of the clerk of the Superior Court. On July 6, 1934, the plaintiff complained to the compensation commissioner that the $6800 had not been paid and the commissioner communicated the complaint to the defendant; in the latter part of the same month the plaintiff personally made complaint, at the defendant's New York office, of the nonpayment of the award. In December, 1937, he again complained to the compensation commissioner that the award had not been paid. The finding is that he made no demands in the meantime "because of . . . fear of possible retaliation on the part of the [defendant] embarrassing his credit," he having, in the fall of 1934 engaged in the business of distributing oil, gas and other petroleum products in Bridgeport, and in the spring of 1935 formed and thereafter actively engaged in a corporation dealing, in Hartford, in the same products as are sold by the agents, operators, and distributors of the defendant.

On June 15, 1934, the plaintiff was informed by his superior at Albany that his employment was to be terminated and was shown a letter from the main office of the defendant in New York stating that, in connection with the termination of his employment, a special voluntary allowance had been granted, effective July 1, 1934, for the period of twelve months at the rate of $566.66 per month. The defendant for many years customarily had paid such special allowances to employees whose services had commended themselves to their superiors and whose employment was terminated without fault on their side. The services of the plaintiff had been faithfully rendered, and the defendant terminated his employment solely because of the physical and mental condition from which

he was suffering, apparently in consequence of the injuries received in the accident. On July 27, 1934, checks totaling $566.66 were sent the plaintiff from the defendant's Albany office with a letter stating that they were "in payment of the special allowance due for the month of July," similar letters accompanied payments made in September and October, and the monthly payments continued until $6800 had been paid. All of these checks were made payable to James L. McIntyre.

The trial court concluded that the plaintiff was justified in assuming that the compensation award and the voluntary special allowance were two separate transactions and that he was to receive the allowance in addition to the award, that this understanding was confirmed by the letters accompanying the monthly checks and by subsequent conduct of the defendant, and that the defendant failed to sustain the burden of proof of its defense of payment of the award.

The defendant does not attack the finding or conclusions, but assigns error in overruling its claims of law. These were that the Superior Court was without jurisdiction to enter judgment based upon the award because the latter "is not a final judgment and there is no fixed amount which can be the basis of liability"; also that a judgment, if rendered for the plaintiff, should not, as it did, include interest from the date of the award to December, 1937 (when the last complaint of nonpayment was made to the compensation commissioner) because the failure to make payment before the latter time "was not due to the delay, fault or neglect" of the defendant. For support of the first of these claims reliance is placed on provisions in § 5240 of the General Statutes that "any award of, or voluntary agreement concerning, compensation . . . shall be subject to modification, upon the request of

either party," by the compensation commissioner in the manner and for causes therein specified, and that the commissioner "shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question." The maximum compensation period for total incapacity is five hundred and twenty weeks. General Statutes, § 5236.

Section 5251 of the General Statutes provides that if no appeal from an award be taken it "shall be final and may be enforced in the same manner as a judgment of the superior court. The superior court is authorized to issue execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the superior court." The defendant claims that, notwithstanding these provisions, the award is not a final judgment in the sense of being permanently fixed and conclusive because under the provisions of § 5240 of the General Statutes, quoted supra, it is subject to modification for a cause and in the manner therein specified, and jurisdiction remains in the compensation commissioner, for that purpose, throughout the compensation period. In the case of an award which provides for weekly payments of compensation during the period, as is the normal and usual method (*Reid* v. *Hartford Fuel Supply Co.,* 120 Conn. 541, 544, 182 Atl. 141), it is not necessarily, until the end of the compensation period, a final determination between the parties or an absolute money judgment which conclusively fixes the total amount which the employer must pay, inasmuch as it is subject, at any time during that period, to modification, under § 5240 of the General Statutes, as to payments not already accrued. *O'Keefe* v. *Elmer Automobile Co.,* 112 Conn. 370, 378, 152 Atl. 280.

However, § 5253 of the General Statutes authorizes the commissioner to direct, or approve a voluntary agreement providing for, commutation of compensation for the entire period into a single lump sum which shall maintain a true equivalence of value with due discount for present payment of sums which would fall due in the future if the award was on the basis of weekly or other periodical payments. In the instant case it expressly appears from the voluntary agreement that such a commutation was made and that immediate payment of the commuted lump sum was contemplated. That sum is to be regarded as representing "the present worth of the entire compensation for the [compensation] period." *Reid* v. *Hartford Fuel Supply Co.*, supra, 545. An obvious purpose of commutation into a single lump sum is to effect an immediate determination of the rights of the employee and the liability of the employer as to the entire compensation by fixing the amount to be paid and accepted, with a single payment thereof instead of the usual weekly instalments or other periodical payments extending over the compensation period, due allowance, as by discount, being made for the advantages accruing thereby to the employee. When, as here, the award is so commuted and made presently payable, it thereupon becomes a final judgment. *O'Keefe* v. *Elmer Automobile Co.*, supra, 379. As such it is enforceable as provided in § 5251 of the General Statutes, at least in the absence of motion to reopen it.

The issuance of execution "upon any uncontested or final award" authorized in § 5251 is not an exclusive method of enforcement. That statute provides that the award "may be enforced in the same manner as a judgment of the superior court." Therefore, resort may be had to the ordinary action upon a judgment (Practice Book, Form 173; *Fisher, Brown & Co.* v.

*Fielding,* 67 Conn. 91, 102, 34 Atl. 714) as in this instance; in fact, in view of the contentions interposed by the defendant, an action in which they could be litigated was obviously preferable to an attempt to enforce by execution, indeed apparently was necessary.

The defendant's second claim of law, concerning the period for which interest is recoverable, is based upon another provision in § 5251 of the General Statutes, that "in cases where, through the fault or neglect of the employer or insurer, . . . payments have been unduly delayed, the commissioner may include in his award interest. . . ." This provision and others following relating to the rate to be allowed manifestly refer to circumstances preceding the award and have no application to the present situation; the ordinary rule of interest applies, and the trial court was correct in allowing it from the date of the award, when the fixed sum became due and payable, the wrongful detention of the money having been from that time. *Venezia* v. *Fairfield,* 118 Conn. 325, 333, 172 Atl. 90.

There is no error.

In this opinion the other judges concurred.